1

2

3

4

5              UNITED STATES DISTRICT COURT

6              EASTERN DISTRICT OF WASHINGTON

7   LAURA E. BULZOMI,

8                      Plaintiff,          NO:  2:13-CV-0168-TOR

9        v.                                ORDER GRANTING DEFENDANT'S
                                           MOTION FOR SUMMARY
10  CAROLYN W. COLVIN,                     JUDGMENT

11                     Defendant.

12

13       BEFORE THE COURT are the parties' cross-motions for summary

14  judgment (ECF Nos. 17, 20).  Plaintiff is represented by Dana C. Madsen.

15  Defendant is represented by Carol A. Hoch.  The Court has reviewed the

16  administrative record and the parties' completed briefing and is fully informed.

17  For the reasons discussed below, the Court grants Defendant's motion and denies

18  Plaintiff's motion.

19  //

20  //

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.*, at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in

"substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations (20 C.F.R.

§ 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past ("past relevant work").  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R.

§ 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the

analysis concludes with a finding that the claimant is disabled and is therefore

entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above.

*Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  If

the analysis proceeds to step five, the burden shifts to the Commissioner to

1    establish that (1) the claimant is capable of performing other work; and (2) such

2    work "exists in significant numbers in the national economy."  20 C.F.R.

3    § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

4                                **ALJ'S FINDINGS**

5           Plaintiff filed applications for disability insurance benefits and supplemental

6    social security income on June 13, 2007, alleging a disability onset date of January

7    1, 2002.  Tr. 343-45, 346-53.  Plaintiff's claims were denied initially and on

8    reconsideration.  Tr. 215-21, 222-25.  Plaintiff requested an administrative review

9    hearing, which was conducted on June 4, 2009.  Tr. 43-83, 232-47.  On June 18,

10   2009, the administrative law judge ("ALJ") issued a decision finding that Plaintiff

11   was not disabled under the Social Security Act.  Tr. 162-78.  Plaintiff requested a

12   review of the decision, Tr. 250-51, and the Appeals Council remanded for

13   rehearing on January 25, 2011.  Tr. 179-81.

14          Plaintiff's second administrative review hearing was held on April 8, 2011.

15   Tr. 84-119.  On May 9, 2011, the ALJ issued a decision finding that Plaintiff was

16   not disabled under the Social Security Act.  Tr. 182-210.  On May 24, 2011,

17   Plaintiff requested a review of the ALJ's decision by the Appeals Council, Tr. 290-

18   92, and on February 8, 2012, the Appeals Council remanded for rehearing before a

19   different ALJ.  Tr. 211-14.

20

1    Plaintiff's third and final administrative review hearing was held on July 24,

2    2012.  Tr. 120-57.  At the hearing, Plaintiff amended her alleged disability onset

3    date to June 13, 2007, and dismissed her application for disability benefits under

4    Title II.  Tr. 126.  On August 20, 2012, the ALJ issued a decision finding that

5    Plaintiff was not disabled under the Social Security Act.  Tr. 14-40.

6    At step one, the ALJ found Plaintiff had not engaged in substantial gainful

7    activity since June 4, 2007.  Tr. 19.  At step two, the ALJ found Plaintiff had

8    severe impairments, Tr. 19-20, but at step three, the ALJ found Plaintiff's

9    impairments did not meet or medically equal a listed impairment.  Tr. 20-21.  The

10   ALJ then determined Plaintiff had the residual functional capacity ("RFC") to:

11           perform medium work as defined in 20 CFR 416.967(c). The claimant
12           has the ability to sit, with normal breaks, for a total of about 6 hours in
             an 8-hour day. She is able to stand and/or walk, with normal breaks,
13           for a total of about 6 hours in an 8-hour day. She is able to lift and/or
             carry, including upward pulling, in an 8-hour day, occasionally up to
14           50 pounds and frequently up to 20 pounds. With respect to upper
             extremities, she has the unlimited ability to push and/or pull, other
15           than as stated for lifting and carrying. With respect to lower
             extremities, she has the ability to operate motor vehicles or other
16           machinery that requires use of both lower extremities. She has the
             ability to continuously climb ramps, stairs, ladders, ropes, scaffolds,
17           balance, stoop kneel, crouch, and crawl. She has the unlimited ability
             to reach in all directions, including overhead, and unlimited ability to
18           handle for gross and fine manipulation. She has the unlimited ability
             for exposure to cold, heat, wetness, humidity, noise, vibration, fumes,
19           odors, dust, gases, poor ventilation, and hazardous machinery. From a
             mental standpoint, the claimant has the ability to remember locations
20           and worklike procedures. She can understand and remember very
             short and simple instructions and she [can] carry short and simple
             instructions and some detailed instructions. She has the ability to

maintain attention and concentration for extended periods. She can perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. She can sustain an ordinary routine without special supervision. She can make simple work related decisions. She can complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. She is able to ask simple questions or request assistance. She is able to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. She is able to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. She can respond to changes in the work setting. She is able to be aware of normal hazards and take appropriate precautions. She can travel in unfamiliar places and use public transportation. She is able to set realistic goals and make plans independently of others. The claimant has the ability to work in proximity to, but not close cooperation with others and she can have superficial contact with the public, co-workers, and supervisors.

Tr. 21.  At step four, the ALJ found Plaintiff was able to perform past relevant work as a cashier II, cleanup worker, general laborer, and stock clerk.  Tr. 32-33. Nevertheless, the ALJ alternatively continued to step five.  At step five, after considering the Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found Plaintiff could perform other work existing in significant numbers in the national economy, such as scale operator, laundry sorter, and hand presser.  Tr. 32-33.  Thus, the ALJ concluded that Plaintiff was not disabled and denied her claims.  Tr. 33-34.

On October 11, 2012, Plaintiff requested review of the ALJ's decision by the Appeals Council.  Tr. 10-13.  The Appeals Council denied Plaintiff's request for

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

review on March 7, 2013, Tr. 1-5, making the ALJ's decision the Commissioner's

final decision of the agency for purposes of judicial review.  42 U.S.C. §§ 405(g),

1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

her supplemental security income under Title XVI of the Social Security Act.

Plaintiff generally asserts that the ALJ's conclusions were not supported by

substantial evidence and that Plaintiff is more limited from a physical and

psychological standpoint than the ALJ determined.  ECF Nos. 17, 22.  In support

of this contention, Plaintiff has raised the following issues for review: (1) whether

the ALJ erred in making an adverse credibility determination; and (2) whether the

ALJ properly evaluated and weighed the opinions of Dr. Leslie Waters, Dr. Dennis

Pollack, Dr. Clark Ashworth, Dr. James Opara, Dr. Patricia Kraft, and Dr. Edward

Beaty.  ECF No. 17 at 11-19.

## DISCUSSION

**A. Adverse Credibility Determination**

In social security proceedings, a claimant must prove the existence of

physical or mental impairment with "medical evidence consisting of signs,

symptoms, and laboratory findings."  20 C.F.R. §§ 416.908; 416.927.  A

claimant's statements about his or her symptoms alone will not suffice.  20 C.F.R.

§§ 416.908; 416.927.  Once an impairment has been proven to exist, the claimant

need not offer further medical evidence to substantiate the alleged severity of his or

her symptoms.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).

As long as the impairment "could reasonably be expected to produce [the]

symptoms," the claimant may offer a subjective evaluation as to the severity of the

impairment.  *Id.*  This rule recognizes that the severity of a claimant's symptoms

"cannot be objectively verified or measured."  *Id.* at 347 (quotation and citation

omitted).

        If an ALJ finds the claimant's subjective assessment unreliable, "the ALJ

must make a credibility determination with findings sufficiently specific to permit

[a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's

testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).  In making

this determination, the ALJ may consider, *inter alia*: (1) the claimant's reputation

for truthfulness; (2) inconsistencies in the claimant's testimony or between his

testimony and his conduct; (3) the claimant's daily living activities; (4) the

claimant's work record; and (5) testimony from physicians or third parties

concerning the nature, severity, and effect of the claimant's condition.  *Id.*  If there

is no evidence of malingering, the ALJ's reasons for discrediting the claimant's

testimony must be "specific, clear and convincing."  *Chaudhry v. Astrue*, 688 F.3d

661, 672 (9th Cir. 2012) (quotation and citation omitted).  The ALJ "must

1    specifically identify the testimony she or he finds not to be credible and must

2    explain what evidence undermines the testimony."  *Holohan v. Massanari*, 246

3    F.3d 1195, 1208 (9th Cir. 2001).

4         Plaintiff contends that the ALJ improperly discredited her credibility.  ECF

5    No. 17 at 11-12.  This Court disagrees and instead finds the ALJ provided specific,

6    clear, and convincing reasons supported by substantial evidence for discounting

7    Plaintiff's subjective statements to doctors.  The ALJ based her adverse credibility

8    finding on the following: (1) Plaintiff's statements concerning the severity of her

9    symptoms and limitations were inconsistent with the objective medical evidence;

10   (2) Plaintiff's statements concerning the severity of her symptoms and limitations

11   were inconsistent with her daily activities; and (3) throughout the record, Plaintiff

12   made several inconsistent statements.

13        First, the ALJ found that Plaintiff's statements concerning the severity of her

14   symptoms and limitations were inconsistent with the objective medical evidence.

15   Tr. 27.  The ALJ provided numerous examples in support: although Plaintiff

16   reported individual and family counseling, no records supported this contention;

17   Plaintiff complained of significant and persistent problems with insomnia;

18   however, no specific diagnosis in the record or a workup of sleep related disorders

19   supported this contention; despite alleging antisocial tendencies and paranoia,

20   medical reports described Plaintiff as "friendly and cooperative"; and although

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

Plaintiff alleged cognitive limitations, objective testing showed she is in the average range of intellectual functioning.  Tr. 22-23, 27-30.  These inconsistencies between Plaintiff's alleged limitations and objective medical evidence provided a permissible and legitimate reason for discounting Plaintiff's credibility.  *Thomas*, 278 F.3d at 958.

Second, the ALJ found Plaintiff's description of her daily activities inconsistent with the disabling symptoms and limitations alleged.  Plaintiff alleged debilitating back pain (Tr. 22-23), paranoid and antisocial tendencies (Tr. 25), and difficulty reading, understanding, and concentrating (Tr. 28); however, the ALJ highlighted the following daily activities:

> The claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant reported to Dr. Ashworth she saw her best friend every day, and she talked to her best friend if she did not see her. She went to the movies twice yearly, grocery shopped twice monthly, went out to dinner once monthly, visited family on holidays and played Dungeons and Dragons with friends twice weekly. She attended parent/teacher meetings during the school year. She performed her activities of daily living in a timely manner and prepared meals. She liked to read and was able to describe the plot of a book she just read. Her interests included camping, motorcycle riding, going to the beach/lake, shooting guns, and swimming. She was also teaching one of her daughters to cook. In May 2009, she reported to Dennis Pollack, Ph.D., she was responsible for the care of a small child. She liked to swim at the beach during the summer. She did household chores such as making the beds, dusting, and sweeping. Her hobbies were camping and swimming and she volunteered at Headstart as community service. Her daily activities consisted of getting the children ready for school and taking them to school. Some days, she worked on household chores before performing her

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

1    community service. She then picked up the children and worked on
2    household chores, made lunch, and helped the kids with their
     homework. She made dinner and read books to the children. On May
3    3, 2010, she reported she had been keeping busy and doing a lot of
     babysitting. She had been cleaning up her yard. In her self-report, she
4    stated she cooked, shopped, did laundry, helped the children with
     homework, vacuumed, swept, mopped, gardened, and organized the
5    filing. In April 2012, she was seeing her children every day, except
     for Wednesday . . . .

6    Tr. 26-27 (internal citations omitted).  These inconsistencies between Plaintiff's

7    alleged limitations and her reported daily activities provided a permissible and

8    legitimate reason for discounting Plaintiff's credibility. *Thomas*, 278 F.3d at 958.

9        Finally, the ALJ noted several inconsistencies throughout the record in

10   Plaintiff's statements.  For instance, Plaintiff testified that she could walk no more

11   than a block before she needs to rest and is only able to stand for twenty minutes if

12   she pushes it; however, on her Function Report, she indicated that she was capable

13   of walking two hours and standing four hours before needing to rest. Tr. 25, 423.

14   Further, Plaintiff disclosed the identity of her daughters' fathers to Dr. Wert,

15   naming two separate individuals; however, she later told Dr. Pollack that another

16   man was the father of both children.  Tr. 27, 503, 772.  These and other identified

17   inconsistencies between Plaintiff's statements provided a permissible and

18   legitimate reason for discounting Plaintiff's credibility. *Thomas*, 278 F.3d at 958.

19   Accordingly, this Court concludes that the ALJ did not err in discrediting

20   Plaintiff's credibility.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

**A. Medical Opinions**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a the opinion of a treating physician carries more weight than the opinion of an examining physician, and the opinion of an examining physician carries more weight than the opinion of a reviewing physician. *Id.* In addition, the Commissioner's regulations give more weight to opinions that are explained than to opinions that are not, and to the opinions of specialists on matters relating to their area of expertise over the opinions of non-specialists. *Id.* (citations omitted). If a treating or examining physician's opinion is not contradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). Regardless of the source, an ALJ need not accept a physician's opinion that is "brief, conclusory and inadequately supported by

clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

### 1.  Dr. Waters

Plaintiff first argues that the ALJ erred in rejecting the opinion of Dr. Leslie Waters, M.D.[1]  ECF No. 17 at 13-14.  As her treating physician, Plaintiff contends

---

[1] Set apart from the discrete issues Plaintiff raises for this Court's review, Plaintiff challenges the ALJ's failure to consider Dr. Edmund Gray's medical opinion.  ECF No. 17 at 10.  Dr. Gray examined Plaintiff on April 15, 2003, and determined that Plaintiff had moderate work-related impairments.  *Id.* at 10-11, Tr. 634-35. However, Dr. Gray's assessment occurred over four years before Plaintiff's alleged disability onset date and thus is not relevant to determining Plaintiff's limitations during the alleged disability period.  *See* Tr. 31 (similarly finding that Dr. Wert's opinion, given more than two years prior to the amended alleged onset date, should be given no weight because it is not representative of the claimant's level of functioning during the relevant period).  Because of its limited probative value, the ALJ did not need to explicitly reject this evidence.  *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (holding that the ALJ "need not discuss *all* evidence presented to her" but rather only must explain why "significant probative evidence has been rejected") (internal citation omitted).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

1    that Dr. Waters' opinion should be given controlling weight.  *Id.* at 14.  Plaintiff

2    points to Dr. Waters' October 2007 evaluation, in which Dr. Waters opined that

3    although Plaintiff might be capable of light work after retraining, her psychiatric

4    disorder may interfere.  *Id.* at 13, Tr. 715.  Because this opinion was contradicted

5    by other medical professionals, *see e.g.,* Tr. 671, 688, 749, the ALJ need only have

6    given specific and legitimate reasons for rejecting it.  *Bayliss*, 427 F.3d at 1216.

7         The ALJ provided specific and legitimate reasons for rejecting this opinion.

8    First, the ALJ stated this opinion was "not supported by the substantial evidence of

9    record."  Tr. 28.  The ALJ noted Dr. Waters relied on an old radiology study when

10   evaluating Plaintiff's back pain.  Tr. 28, 715.  Further, in Plaintiff's subsequent

11   December 17, 2007 visit with Dr. Waters, Dr. Waters noted only a "little bit" of

12   tenderness along Plaintiff's spine.  Tr. 24, 709.   Because the ALJ need not accept

13   a medical opinion that is "inadequately supported by clinical findings," *Bray*, 554

14   F.3d at 1228, the ALJ provided a clear and convincing reason for rejecting Dr.

15   Waters' opinion.

16        Second, the ALJ noted Dr. Waters' opinion relied heavily on Plaintiff's

17   subjective complaints.  Tr. 28; *see also* Tr. 23 ("[T]he claimant's significant

18   limitations were by self-report and are not consistent with other treatment notes

19   showing insignificant objective findings . . . .").  As the Defendant aptly notes,

20   Plaintiff's subjective complaints make up the majority of Dr. Waters' October

1    2007 evaluation notes.  ECF No. 21 at 18, Tr. 715.  As explained above, the ALJ

2    determined Plaintiff's subjective complaints were not credible.  Because the ALJ

3    need not accept a medical opinion based on a claimant's non-credible self-

4    reporting, *Tomasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008), the ALJ

5    properly rejected this diagnosis.

6        Finally, the ALJ noted that Dr. Waters' opinion regarding Plaintiff's

7    psychiatric disorder is "not a specific medical source statement in that it is vague

8    and not descriptive of the claimant's explicit abilities."  Tr. 28, 715.  Without a

9    more specific description of the level of interference Plaintiff would experience as

10   a result of her mental impairments, the ALJ was unable to accept Dr. Waters'

11   conclusory opinion.  Tr. 28.  Because the ALJ need not accept a medical opinion

12   that is "brief, conclusory, and inadequately supported by clinical findings," *Bray*,

13   554 F.3d at 1228, the ALJ provided another clear and convincing reason for

14   rejecting Dr. Waters' opinion.  Accordingly, the ALJ did not err in rejecting Dr.

15   Waters' opinion.

16        **2.  Dr. Pollack**

17        Plaintiff's second contention is that the ALJ erred when she assigned only

18   "little weight" to Dr. Pollack's opinion.  ECF No. 17 at 14.  Plaintiff points to Dr.

19   Pollack's May 15, 2009 evaluation in which he opined Plaintiff would have

20   marked work-related limitations in performing activities within a schedule,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

1   maintaining regular attendance, being punctual within customary tolerances,

2   completing a normal workday and workweek without interruptions from

3   psychologically based symptoms, performing at a consistent pace without an

4   unreasonable number and length of rest periods, accepting instructions, and

5   responding appropriately to criticism from supervisors.  *Id.* at 14-15, Tr. 778-81.

6       Because Dr. Pollack's opinion was contradicted by numerous other medical

7   professionals, *see* Tr. 28-30, the ALJ need only have given specific and legitimate

8   reasons supported by substantial evidence to reject it.  *Bayliss*, 427 F.3d at 1216.

9       First, the ALJ noted several inconsistencies between Dr. Pollack's opinion

10  and his medical reports:

11      [Dr. Pollack's] diagnoses do not lead logically to moderate and
        marked ratings. Dr. Pollack noted the claimant arrived for the
12      interview early. She was able to complete the intake form on her own,
        she was friendly and cooperative throughout the interview and testing.
13      . . She was able to complete psychological testing without any undue
        number and length of rest periods and also performed them within the
14      average range of intelligence and within the normal range.

15  Tr. 30-31.   Second, the ALJ noted the inconsistencies between the doctor's

16  opinion and Plaintiff's reported daily activities:

17      [Dr. Pollack] noted [claimant] was responsible for the care of a small
        child and described her ability to get the children ready for school,
18      take them to school, do household chores, and perform her community
        service work. She also picked the children up and helped them with
19      their homework.

20  Tr. 31.  The ALJ found both Dr. Pollack's medical reports and Plaintiff's daily

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

1  activities did not support Dr. Pollack's opinion that Plaintiff suffered from

2  moderate and marked limitations in cognitive and social functioning.  Tr. 30-31.

3  This Court finds that the above reasons qualify as specific, clear, and legitimate

4  reasons supported by substantial evidence for rejecting Dr. Pollack's opinion.

5  Accordingly, the ALJ did not err in rejecting Dr. Pollack's opinion.

6              ### 3.  Dr. Ashworth and Dr. Thompson

7        Plaintiff's third contention is that the ALJ erred when she assigned

8  "significant weight" to the opinion of Dr. Ashworth, Ph.D.  ECF No. 17 at 16.  In a

9  joint examination by Dr. Renée Thompson and Dr. Ashworth, the two examining

10 psychologists opined Plaintiff would be "capable of understanding, remembering,

11 and carrying out simple work related instructions" and would have "difficulty

12 interacting in a work setting with coworkers and supervisors in a high stress

13 environment."  Tr. 30, 680.  Specifically, Plaintiff challenges the ALJ's decision to

14 give greater weight to Dr. Ashworth and Dr. Thompson's opinion, as compared to

15 the opinions of Dr. Pollack and Dr. Waters.  ECF No. 17 at 16-17.

16       This Court finds the ALJ assigned proper weight to Dr. Ashworth and Dr.

17 Thompson's opinion.  The ALJ afforded the opinion of Dr. Ashworth and Dr.

18 Thompson, examining psychologists, significant weight based on their thorough

19 interview and clinical observations as documented in the record.  Tr. 30, 674-80.

20 As detailed above, the ALJ properly rejected the opinions of Dr. Waters and Dr.

1    Pollack.  Therefore, this Court finds that the ALJ did not err when she afforded the

2    opinions of Dr. Ashworth and Dr. Thompson significant weight.

3              **4.  Dr. Opara**

4              Plaintiff's fourth contention is that the ALJ erred when she failed to assign

5    Dr. Opara's determination any weight.  ECF No. 17 at 17.  Plaintiff points to Dr.

6    Opara's August 11, 2007 examination in which he opined Plaintiff had moderate

7    workplace limitations of anxiety, depression, and paranoid personality.  *Id.*

8              This Court finds the ALJ's failure to assign weight to Dr. Opara's opinion

9    harmless.  Plaintiff fails to explain how, if assigned weight, Dr. Opara's opinion

10   would have changed the ALJ's ultimate determination.  *See id.*  This Court will

11   decline to reverse an ALJ's decision on account of harmless error, which is defined

12   as an error that is "inconsequential to the [ALJ's] ultimate nondisability

13   determination."  *Molina*, 674 F.3d at 1111, 1115.

14             Dr. Opara's opinion, if assigned significant weight, would have actually

15   resulted in a less restrictive RFC finding than ultimately determined by the ALJ.

16   Regarding physical limitations, Dr. Opara opined Plaintiff could sit comfortably

17   with no obvious limitations and lift or carry up to forty pounds frequently.  Tr. 671.

18   However, the ALJ, based on the entire record, ultimately determined Plaintiff

19   could sit for a total of six hours per day with normal breaks and lift or carry up to

20   twenty pounds frequently.  Tr. 21.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

1    Regarding mental limitations, Dr. Opara stated the following: "I am unable

2    to identify any relevant visual, communicative, and workplace environmental

3    limitations other than her anxiety, depression, and paranoid personality, which

4    seemed to be moderate." Tr. 671.  The ALJ at step two classified Plaintiff's

5    anxiety and depression as severe impairments.  Tr. 19.  Further, at step three, the

6    ALJ determined Plaintiff would have moderate difficulties in social functioning.

7    Tr. 20.  In recognition of Plaintiff's limitations, the ALJ included the following

8    limitation in the RFC finding: "[Plaintiff] has the ability to work in proximity to,

9    but not close cooperation with others and she can have superficial contact with the

10   public, co-workers, and supervisors." Tr. 21.  Therefore, because Plaintiff has

11   failed to explain how Dr. Opara's opinion, if assigned any weight, would have

12   changed the ALJ's ultimate findings, this Court declines to find error.

### 5.  Dr. Kraft and Dr. Beaty

14   Finally, Plaintiff contends that the ALJ erred when she failed to assign any

15   weight to the opinions of Dr. Kraft and Dr. Beaty, both non-treating, non-

16   examining psychologists.  ECF No. 17 at 18-19.  Specifically, Plaintiff points to

17   Dr. Kraft's Mental Residual Functional Capacity Assessment, which Dr. Beaty

18   subsequently affirmed. *Id.* at 17, 19.  In Section I of this assessment, titled

19   "Summary Conclusions," Dr. Kraft found Plaintiff moderately limited in eight

20   work-related categories. *Id.* at 17, Tr. 703-704.  However, in Section III of this

1    assessment, titled "Functional Capacity Assessment," Dr. Kraft merely noted

2    Plaintiff could perform simple tasks and have superficial coworker and public

3    contact due to her reported social limitations.  ECF No. 17 at 17-18, Tr. 705.

4    Plaintiff faults the ALJ for only considering Section III of Dr. Kraft's assessment

5    and ultimately affording both Dr. Kraft's and Dr. Beaty's opinions no weight.

6    ECF No. 17 at 18-19.

7         This Court finds the ALJ properly evaluated the opinions of Dr. Kraft and

8    Dr. Beaty.  First, the ALJ properly focused on the narrative comments in Section

9    III of Dr. Kraft's assessment.  Tr. 29.  The Social Security Program Operations

10   Manual System directs the ALJ to consider Section III of the Mental Residual

11   Functional Capacity Assessment when formulating the appropriate residual

12   functional capacity.  Program Operations Manual System, DI 24510.060(B)(1),

13   *available at* https://secure.ssa.gov/poms.nsf/lnx/0424510060.  Section I, on the

14   other hand, is "merely a worksheet to aid [the medical consultant] in deciding the

15   presence and degree of functional limitations and the adequacy of documentation

16   and does not constitute the RFC assessment."  *Id.* at 24510.060(B)(2)(a).

17   Therefore, the ALJ properly focused on Dr. Kraft's Section III remarks.

18        Second, the ALJ's failure to explicitly assign weight to Dr. Kraft's and Dr.

19   Beaty's opinions is harmless.  Plaintiff fails to adequately explain how, if assigned

20   weight, these opinions would have changed the ALJ's ultimate determination.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 22

This Court will decline to reverse an ALJ's decision on account of harmless error, which is defined as an error that is "inconsequential to the [ALJ's] ultimate nondisability determination." *Molina*, 674 F.3d at 1111, 1115.  Although the ALJ did not explicitly state the weight given to Dr. Kraft's assessment and Dr. Beaty's affirmation of that assessment, the ALJ found these opinions consistent with the evidence of record and ultimately based her RFC finding on the narrative comments provided in Section III.  Tr. 29 (finding Plaintiff capable of performing simple tasks and limiting Plaintiff to superficial contact with the public, co-workers, and supervisors).  Therefore, because Plaintiff has failed to explain how Dr. Kraft's and Dr. Beaty's opinions, if assigned any weight, would have changed the ALJ's ultimate findings, this Court declines to find error.

**IT IS HEREBY ORDERED:**

    1.  Plaintiff's Motion for Summary Judgment (ECF No. 17) is **DENIED.**

    2.  Defendant's Motion for Summary Judgment (ECF No. 20) is

        **GRANTED**.

    The District Court Executive is hereby directed to file this Order, enter **JUDGMENT** for **DEFENDANT**, provide copies to counsel, and **CLOSE** this file.

    **DATED** this September 17, 2014



                    THOMAS O. RICE
                United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 23